Commonwealth *v.* Garramone, Appellant.

Argued April 11, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Henry M. Stevenson,* with him *John Alessandroni,* for appellant.—The evidence showed that at the time the shot was fired the defendant was in a mental state of great excitement, anger and indignation as the result of having been told that the deceased, a man much the physical superior had beaten the defendant's son Frank that day.

Whether there was the legal time necessary for cooling and for the forming of a deliberate and premeditated purpose to kill is not proven, but that there was no such cooling has been proven by the Commonwealth's case.

This case is the first, so far as counsel is aware, that has come to the Supreme Court, in which a general plea of guilty was entered by a defendant upon an indictment charging murder before a judge, without a jury, and in which the sitting judge found the defendant guilty of first degree murder and fixed the penalty as death.

This was not a case involving robbery, or the commission of any other felony, nor was it a case where the act was one striking at the structure of society. It was

a case of passion born of the indignation of a parent at injury to his child.

The act of defendant was due to the love of his children, and his own desire to protect them and was the direct and connected act of a sequence immediately following the story told him by his wife but a short time before.

This case was heard, and without argument of counsel on either side, the learned trial judge immediately upon the conclusion of the hearing of the testimony entered the judgment of guilty of murder in the first degree and immediately sentenced the defendant to death.

*Vincent A. Carroll*, Assistant District Attorney, with him *John A. Skelton, Jr.*, and *Charles F. Kelley*, District Attorney, for appellee.—Where all the elements of first degree murder are shown, the appellate court will not weigh the evidence nor pass upon the credibility of witnesses: Com. v. Daynarowicz, 275 Pa. 235; Com. v. Bishop, 285 Pa. 49; Com. v. Watkins, 298 Pa. 165; Com. v. Paul, 289 Pa. 452; Com. v. Staush, 256 Pa. 620.

The rule concerning the length of time necessary for a man to achieve the premeditation required in first degree murder is well stated in its completeness by KEPHART, J., in Com. v. Daynarowicz, 275 Pa. 235.

Between ten and twenty seconds was sufficient time in Com. v. Buccieri, 153 Pa. 535; Com. v. Staush, 256 Pa. 620.

Twenty minutes was held sufficient in Com. v. Paul, 289 Pa. 452; Com. v. Anthony, 259 Pa. 65; Com. v. Gibson, 277 Pa. 546.

The learned trial judge did not err in fixing the penalty and punishment as death: Com. v. Ritter, 13 Pa. D. & C. 285.

In the case at bar, the trial judge was the one best qualified to determine proper punishment under the Act of 1925. Under the circumstances, the exercise of his discretion should not be disturbed.

OPINION BY MR. JUSTICE LINN, May 26, 1932:

After appellant pleaded guilty to an indictment for murder, the court heard evidence produced on behalf of the Commonwealth and also on behalf of defendant, and adjudged. him guilty of murder of the first degree and imposed sentence of death. Defendant appeals. See article V, section 24, of the Constitution; the Acts of April 15, 1870, P. L. 15, and May 19, 1874, P. L. 219; Com. v. Paul, 289 Pa. 452, 137 A. 606.

The Act of May 14, 1925, P. L. 759, amending section 75 of the Crimes Act of 1860, P. L. 382, provides: "That every person convicted of the crime of murder of the first degree shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life at the discretion of the jury trying the case which shall fix the penalty by its verdict. The court shall impose the sentence so fixed as in other cases. In cases of pleas of guilty, the court, where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life." The Act of March 14, 1877, P. L. 77, entitled "To repeal so much of the fourth section of the Act of February third, one thousand eight hundred and forty-three, entitled 'An act to abolish the court of general sessions of the City and County of Philadelphia, and for other purposes,' and of any other act or law which requires two judges, learned in the law, to be a quorum of the court of oyer and terminer for the trial of homicide cases" provides "That from and after the passage of this act, one law judge shall be competent and sufficient to hold a court of oyer and terminer of the trial of homicide as well as other cases, and all laws or parts of laws inconsistent herewith are hereby repealed."

Appellant states three questions for review. 1. Did the court err in adjudging defendant guilty of murder in the first degree? 2. Did the court err in imposing sentence of death? 3. Was there error "in receiving in rebuttal of good-reputation evidence, testimony of [a]

specific" act? In view of the conclusion reached on the second question, we need not discuss the third, merely noting that no objection was made to the evidence, counsel for defendant apparently being of opinion that objectionable evidence (Com. v. Colandro, 231 Pa. 343, 355, 80 A. 571) would not be considered by the judge.

1. For the purpose of passing on the first question, we have carefully read the evidence as required by the Act of 1870, supra. In considering it, we have accepted as true all the testimony from which the learned trial judge may have found that the murder was wilful, deliberate and premeditated within the legal meaning of those words: Com. v. Diaco, 268 Pa. 305, 111 A. 879; Com. v. Paul, supra; Com. v. Watkins, 298 Pa. 165, 167, 148 A. 65.

Miller, who was killed, was about twenty-five years old and lived at 1844 Hoffman Street. Defendant, aged forty-nine, lived on the opposite side of the street at number 1841. Between one and two o'clock, April 12 1930, defendant's ten-year-old daughter and the four-year-old son of the decedent Miller had some childish altercation in the street. Miller was playing cards on a door step near by, when his attention was drawn by his small son to their quarrel. He gave the child a stick and told him to strike the girl. Then, defendant's son—aged eighteen,—approached Miller (described as a "pretty large" man) and remonstrated, whereupon Miller struck him in the face and knocked him down on the payment twice, the second time leaving him unconscious. The young man was assisted into his house, not however until his mother, wife of defendant, attacked or attempted to attack Miller. In the afternoon Miller went to a ball game. During the day, defendant had been working on his farm some distance away. He came home between four and five o'clock; he, himself, fixed the time at 4:45. He found his wife much agitated, and on inquiring the reason, was informed by her of the circumstances in which Miller had assaulted their son. Several witnesses

testified that after he came home they heard him threaten to shoot Miller. Shortly after 5:30, Miller returned from the ball game. As he stood on the front step of his house, intending to enter, defendant came out of his house with a shotgun and shot Miller. The records of the police station show that the shooting was reported there by telephone at 5:45. The evidence is not clear whether the shell discharged by the gun was loaded with buck shot or smaller shot.

It appears, then, that in something more than half an hour after defendant returned home and learned of the occurrences of the day, he shot Miller, who died shortly after being taken to a hospital. As to the inferences that may be made from the threats and from the use of the gun, see Com. v. Moon, 264 Pa. 63, 107 A. 389; and Com. v. Green, 294 Pa. 573, 584, 144 A. 743. The record, therefore, reveals all the "ingredients necessary to constitute murder in the first degree."

Appellant contends that there was not sufficient time between learning of the incidents involving his children and the time of the actual shooting, to supply the qualities of wilful, deliberate and premeditated killing; that interval is not to be considered abstractly, but as one of the circumstances of the transaction; less than a minute, in connection with other circumstances, was held sufficient in Com. v. Buccieri, 153 Pa. 535, 540, 26 A. 228; in Com. v. Paul, supra, the interval was about twenty minutes; on the same subject, see Com. v. Daynarowicz, 275 Pa. 235, 238, 119 A. 77; Com. v. Parker, 277 Pa. 171, 120 A. 771.

2. In considering the second point, we may first note the gradual legislative enlargement of the scope of review required of this court. In earlier times, the record brought up did not include the evidence or the charge: Middleton v. Com., 2 Watts 285; Haines v. Com., 99 Pa. 410. The Act of November 6, 1856 (P. L. 1857, page 795), changed this, and provided for exceptions to rulings on evidence and to the charge, but limited appeals

to those specially allowed by a justice of this court or by the attorney general: Schoeppe v. Com., 65 Pa. 51. Probably as a result of the decision in Schoeppe's Case, the Act of February 15, 1870, P. L. 15, was passed, creating a "radical change in our criminal jurisprudence," as this court said in that case, and providing for appeal without special leave, a provision subsequently incorporated in the Constitution. The Act of 1874, P. L. 219, reënacted this right and provided for exceptions as in civil cases. The next important change came with the Act of April 22, 1903, P. L. 245, authorizing a motion for a new trial on after-discovered evidence even though the term in which a defendant was convicted and sentenced had ended: Greason's Cases, 204 Pa. 64, 53 A. 539; 205 Pa. 630, 55 A. 788; and 208 Pa. 126, 57 A. 349; Com. v. Hine, 213 Pa. 97, 62 A. 369; also see, Review of Homicide Cases in Pennsylvania by the late Justice SADLER, 70 U. P. Law. Rev. 14. The most recent enlargement of the scope of review is contained in the Act of May 14, 1925, 14 P. L. 759, under which defendant was sentenced. The pertinent words, now for consideration, are "...... In cases of pleas of guilty, the court, where it determines the crime to be murder of the first degree, shall at its discretion impose sentence of death or imprisonment for life." By the act (another "very radical change in the law:" Com. v. Madaffer, 291 Pa. 270, 139 A. 875), the legislature recognized and established degrees of culpability, provided two possible penalties, and vested the jury with discretion to determine by its verdict which of the two should be inflicted; it also provided that, on a plea of guilty, the court must determine the appropriate penalty and impose sentence accordingly.

On this appeal, we are concerned only with the duty of the judge and must examine the record to see whether the discretion vested in him was judicially exercised; whether the record shows a case in the class justifying sentence of death, or in the class justifying the lower

sentence of life imprisonment. Appellant's brief states the following fact, not contradicted by the Commonwealth. "This case was heard, and, without argument of counsel on either side, the learned trial judge immediately, upon the conclusion of the hearing of the testimony, entered the judgment of guilty of murder in the first degree and immediately sentenced the defendant to death." We are all of opinion that the gravity of the duty to be performed in such cases requires that the judge who hears the evidence on a plea of guilty, should at least make and file a brief memorandum which will reveal the reasons for the sentence imposed. That procedure will not only facilitate review to determine whether the legislative mandate has been complied with, but will also make it unnecessary for this court to return the record for a written opinion pursuant to Rule 58. As this is the first appeal challenging the penalty imposed pursuant to the statute, we shall dispose of it without delaying decision by remitting the record for such opinion.

It is clear that this was not an atrocious murder planned and committed in cold blood, or one committed in the perpetration of robbery or other grave crime, though, by saying that, we do not intend to enumerate all possible examples of the class that should receive sentence of death, or otherwise attempt to distinguish one class from the other; definition may come, as cases present themselves. This is the case of an industrious man without criminal record, whose character as a peaceful law-abiding citizen was testified to by a number of persons. After he returned from his day's work and found his wife and son in the condition described, he committed the crime under the resulting provocation, and in circumstances, which, we think, place him within the legislative classification requiring the milder of the two possible sentences. The imposition of a sentence of death, instead of life imprisonment, was such abuse of discretion as to require modification by resentence. We

are not commuting the sentence or otherwise performing the duty of the pardon board. "To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance:" U. S. v. Benz, 282 U. S. 304, 311.

There is no doubt,—the brief of the Commonwealth does not question it,—of the power to modify the sentence. The Act of June 16, 1836, P. L. 784, section 1, 17 PS, sec. 1, authorizes this court "to examine and correct all and all manner of errors of the......courts of this Commonwealth, in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and, thereupon, to reverse, modify or affirm, such judgments and decrees or proceedings, as the law doth or shall direct......" See, generally, Schmuck v. Hartman, 222 Pa. 190, 194, 70 Atl. 1091; Daniels v. Com., 7 Pa. 371, 375; Summers v. Kramer, 271 Pa. 189, 197, 114 Atl. 525. On the exercise of the power to reduce the penalty from death to life imprisonment, see also, State v. Olander, 193 Iowa 1379, 186 N. W. 53, 29 A. L. R. 306, with annotation at page 318; State v. Ramirez, 34 Idaho 623, 203 Pac. 279, 29 A. L. R. 297.

The sentence of death is vacated and the record is remitted with instructions to sentence the defendant to imprisonment for life according to law.