Commonwealth *v.* Zietz, Appellant.

Argued January 13, 1950.. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*G. Coe Farrier,* with him *I. Louis Rubin,* for appellant.

*Willard S. Curtin,* District Attorney, with him *Donald W. Van Artsdalen,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 20, 1950:

A jury found the appellant, Harry Zietz, guilty of murder in the first degree and imposed the death penalty. A description of the events leading up to the crime is set forth at length in the opinion of this Court in *Com-*

*monwealth v. Darcy,* 362 Pa. 259, 66 A. 2d 663. Briefly stated, these are the facts: At about 11:25 P.M. on December 22, 1947, Zietz, with two confederates, Darcy and Foster, entered a tavern in the village of Feasterville, Bucks County; a fourth companion, Capone, remained outside in a parked automobile. The guests in the tavern were robbed at the point of guns; Zietz and Foster fired at two of them, injuring them severely;[1] Zietz showed extreme callousness and brutality in his actions and his remarks during the course of the holdup. The three bandits withdrew from the tavern, entered the car in which Capone was waiting, and, with Zietz at the wheel, they all started to flee from the scene. Meanwhile an alarm had been given and two persons, one of them William Kelly, emerged from a hotel across the road and stood there momentarily talking with a friend. As the robbers' automobile passed this group, Zietz, with his left hand, fired two shots from the front window of the car in the direction of Kelly who was from 10 to 20 feet away. One of the bullets struck Kelly in the head causing his death on the following day. Zietz and his three companions thereupon drove a few miles to another tavern, where, arriving about five minutes before midnight, they staged another holdup. All of them were apprehended the same night; the following day they signed written confessions in which they admitted their participation not only in the events above stated but also in a number of armed robberies in other parts of Pennsylvania and in New Jersey at various times during previous weeks. For the killing of Kelly, Darcy was tried separately before a jury which found him guilty of murder in the first degree and imposed the penalty of death. Capone pleaded guilty and the court declared the crime to be murder in the first de-

---

[1] There seems to be some question as to whether any of the shots fired by Zietz actually hit either of the wounded persons.

gree and sentenced him to life imprisonment. Foster and Zietz, tried before a jury, were both found guilty of first degree murder with the death penalty; from the judgment entered thereon and the sentence imposed Zietz now appeals.

Several questions raised by appellant merit but little discussion. He claims that the court failed to define second degree murder and manslaughter and limited the verdict of the jury to first degree murder or acquittal. As a matter of fact, however, the court, after defining the crime of common law murder, read to the jury the statutory provisions which define and distinguish the two degrees of murder, and the court instructed the jury that, if they found the defendant guilty of murder, they should state in their verdict whether it was murder in the first or the second degree; the court properly added that if they found that the crime was murder committed in the perpetration of a robbery their verdict should be murder in the first degree. No definition of the crime of manslaughter was required because there was no evidence which would have justified a conviction of that offence: *Commonwealth v. Sutton,* 205 Pa. 605, 608, 609, 55 A. 781, 782; *Commonwealth v. LeGrange,* 227 Pa. 368, 76 A. 63; *Commonwealth v. Newson,* 277 Pa. 48, 52, 120 A. 707, 708; *Commonwealth v. Hadok,* 313 Pa. 110, 115, 169 A. 111, 113. The only duty that the court had to observe was to refrain, as it did, from giving an imperative instruction which would take from the jury their right to determine the degree of the crime of murder: *Commonwealth v. Sheets,* 197 Pa. 69, 79, 80, 46 A. 753, 754; *Commonwealth v. Sutton,* 205 Pa. 605, 608, 55 A. 781, 782; *Commonwealth v. Kovovic,* 209 Pa. 465, 468, 469, 58 A. 857, 858; *Commonwealth v. LeGrange,* 227 Pa. 368, 76 A. 63; *Commonwealth v. Morrison,* 266 Pa. 223, 230, 109 A. 878, 880.

Another complaint of appellant is that the court, having sentenced Capone to life imprisonment, did not

act with equal justice in sustaining the penalty of death fixed by the jury in appellant's case. Apart from other answers that might be made to this argument it is sufficient to point out that Capone at the time of the occurrence of the crime was 16 years of age, whereas Zietz was 18, that Capone, unlike Zietz, was found by the court to be mentally subnormal, a psychiatrist who examined him having testified that his intellectual age was probably around the twelve year level; moreover, not only did Zietz take a leading and aggressive part in the holdup whereas Capone remained outside in the automobile, but it was Zietz who actually committed the murder for which all of those engaged in the affair were indicted and convicted.

The court refused to affirm points for charge submitted by appellant's counsel to the effect that, if the jury found from the evidence that the robbery was completed at the time the shot which killed Kelly was fired, then the homicide was not committed in the perpetration of a robbery. This refusal was justified because the matter had been fully covered in the charge, the jury having been told repeatedly that it was only if the homicide was committed during the course of the robbery that it was murder in the first degree under the statute. The court properly added, however, that if at the time Kelly was killed defendants were in flight from the scene of the crime, the robbery, from a legal standpoint, was still in progress: *Commonwealth v. Kelly*, 337 Pa. 171, 174, 175, 10 A. 2d 431, 433; *Commonwealth v. Hough*, 358 Pa. 247, 250, 56 A. 2d 84, 85; *Commonwealth v. Darcy*, 362 Pa. 259, 280, 281, 66 A. 2d 663, 674. Whether they actually *were* in flight at that time was left to the jury to be determined as a question of fact.

Defendants' motions for a new trial were argued before President Judge HIRAM H. KELLER and Judge CALVIN S. BOYER, the latter having been the trial judge,

but, before a decision was reached, illness overtook Judge BOYER and incapacitated him from further service, resulting ultimately in his resignation. At the request of Judge KELLER this Court assigned Judge FRED W. DAVIS of the 43rd Judicial District to sit with Judge KELLER in order to hear and determine the case. Thereupon reargument was had before those two judges and they dismissed the motions for a new trial. Appellant now claims that the motions should not have been acted upon by judges who did not hear the evidence; they point to the case of *Commonwealth v. Johnson,* 348 Pa. 349, 35 A. 2d 312, where, a defendant having pleaded guilty and the court having adjudged the crime to be murder in the first degree and imposed the sentence of death, this Court reversed the judgment and ordered a new trial because the trial court had privately received a large amount of information about defendant's criminal record and used it in coming to a conclusion as to the degree of the crime of which the defendant was guilty; we said in that case that the judges sitting in cases of murder where there is a plea of guilty ought to hear all the testimony in the case in the presence of defendant and his counsel in order to determine the degree of the crime and to fix the penalty. Obviously that statement has no relevancy to the present situation for here the judges who heard argument on the motions for a new trial could properly rule on the questions of law involved, the degree of the crime and the penalty having been determined, not by them, but by the jury. When the judge before whom an action was tried is disabled, resigns, or dies, a motion for a new trial may be made to, and determined by, another judge of the same court or a special judge designated to act: see 46 C. J. 288, 289, §249(2).

Appellant's most vigorous argument is directed against the alleged harshness of a death sentence in

the case of a youth of but 18 years of age. It must be borne in mind, however, that it was a jury that fixed the penalty. It was said in *Commonwealth v. Taranow*, 359 Pa. 342, 344, 59 A. 2d 53, 54: "The fact is that, since juries were first empowered to select the appropriate penalty in first degree murder cases as between death and life imprisonment . . . there has been no instance where a jury's fixing of the penalty at death (upon a verdict of guilty of murder in the first degree) has been interfered with on appeal. The reason for that is evident. When a jury finds a defendant guilty of the highest grade of crime possible for a felonious homicide, viz., murder in the first degree, it then becomes its province to fix the penalty by its verdict, as provided by the statute; and, when it has done that, it has done its legal duty and its action may not properly be called in question." The plea now made, therefore, is not properly addressed to the appellate court: *Commonwealth v. Simmons*, 361 Pa. 391, 405, 65 A. 2d 353, 360. It was said by Mr. Justice (later Chief Justice) SCHAFFER, speaking for this Court in *Commonwealth v. Cavalier*, 284 Pa. 311, 325, 131 A. 229, 234, where a boy 14 years of age was found guilty of murder in the first degree (from which verdict, at that time, the punishment of death automatically followed) : [2] "The substantial basis of the argument of appellant's counsel in this case is that he should not have been convicted of murder of the first degree, because of his youth. Such an argument may be availing if made to the Board of Pardons to bring about a commutation of sentence, but so far as we are concerned it must, under the law, fall upon deaf ears. Our duty is to ascertain whether the defendant's conviction was in accordance with law, whether his offense contains the ingredients necessary to constitute

---

[2] The Pardon Board subsequently commuted the sentence to life imprisonment.

the crime of murder of the first degree and whether the record discloses errors which in our judgment prejudiced his cause and should work a reversal." Appellant complains of the court's saying to the jury that "Youth alone does not excuse them [the defendants] from responsibility for their acts." As a legal proposition that statement was undoubtedly correct for it has always been the law that all persons above the age of fourteen are presumed to possess the capacity to commit any crime: "All of the authorities state that 'When the child reaches fourteen, any special immunity or presumption of incapacity ceases, and the infant is practically an adult in the eyes of the criminal law' ": *Commonwealth v. Cavalier*, 284 Pa. 311, 324, 131 A. 229, 234; see also Blackstone's Commentaries, Book 4, §§22, 23, 24; Bishop on Criminal Law, 9th ed., vol. 1, pp. 260, 261, §368. Appellant objects more particularly to the fact that the trial judge charged not only, as above stated, that youth alone would not excuse the defendants from responsibility for their acts but that it would not excuse them "from just punishment therefor". This also was a proper statement because the question as to what would be *"just punishment"* under all the circumstances was left to the jury. If the learned trial judge had charged that they should not take into consideration the youthful age of this appellant in deciding upon the penalty such an instruction would certainly have been erroneous. What the court said, however, is not susceptible of that interpretation. To be sure the court did say that, *in its opinion*, if the jury found the defendants or either of them guilty of murder in the first degree, then the death penalty would be the just and proper punishment for the crime, but the court hastened to add: "However, we again remind you that that question is entirely for you and you are not bound by the opinion of the court." Such an expression of opinion is

not objectionable if coupled, as here it was, with the statement that it was not binding upon the jury and that the question was one for them alone to decide: *Commonwealth v. Simmons*, 361 Pa. 391, 405-410, 65 A. 2d 353, 360-362.

Judgment and sentence affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The present appellant, Zietz, and a confederate, Foster (the latter's conviction of murder in the first degree with the death penalty having this day been affirmed, p. 288, supra), were tried together with like result as to each defendant. The trial error to which I called attention in the dissent in the *Foster* case was also committed in respect of the present appellant. I therefore dissent in this case for the same reason.

But, there was still further serious trial error especially as to the present appellant. Zietz being eighteen years old (Foster, twenty-three) at the time of the homicide, the trial judge assumed to tell the jury that "Youth alone does not excuse them [the defendants] . . . from *just punishment* . . . [for their criminal acts]" and ". . . that in the opinion of the Court, if you find these defendants, or either of them, guilty of murder in the first degree, then the death penalty would be the *just and proper punishment* for the crime" (Emphasis supplied). In other words, the court gave it as its considered opinion that the jury could not properly fix the appellant's penalty at life imprisonment merely because of his youth. To my mind, the error in that expression is palpable. By so charging, the trial judge improperly intruded upon a field of deliberation that lay *exclusively* within the province of the jury. Nor is any analogy to be drawn from the right of a trial judge to express an opinion (not binding on the jury) with

respect to the evidence in a case. The matter of the penalty for first degree murder, as between statutorily prescribed limits, is for the jury by virtue of the same positive statute.

By the Act of May 14, 1925, P. L. 759 (now contained in The Penal Code of 1939, 18 PS §4701), the fixing of the penalty between death or life imprisonment for ascertained guilt of murder in the first degree, is by the express terms of the statute, ". . . *at the discretion of the jury* trying the case . . ." (Emphasis supplied). Nowhere does the Act prescribe any standard by which the jury's exercise of *its* discretion is to be guided or influenced by the court or otherwise. In fact, we have expressly noted that this Court may not properly impose any such formula either on the basis of extenuating circumstances or brutality and viciousness: *Commonwealth v. Samuel Jones*, 355 Pa. 522, 534, 50 A. 2d 317. And, never yet has a jury's exercised discretion as to the penalty for ascertained guilt of murder in the first degree been judicially interfered with: see *Commonwealth v. Taranow*, 359 Pa. 342, 344, 59 A. 2d 53. There is no more warrant in the law for judicial intrusion upon the jury's deliberative exercise of its penalty-fixing discretion prior to the rendition of the verdict than there is after the verdict has been rendered.

The majority opinion extenuates for the trial court's interjection by remarking that "the court hastened to add" that the question of the penalty was entirely for the jury and that the jury was not bound by the opinion of the court. The celerity of the court's effort to atone merely by denying binding effect to its gratuitous expression without withdrawing it furnishes no legal excuse for the court's offense; and that is especially so where the error goes directly to a question of life or death. This Court has recognized the seriousness of trial error in such circumstances: see *Commonwealth v. Williams*, 307 Pa. 134, 142, 160 A. 602.

304

It may well be that, without the court's volunteered advice, the jury would have fixed the penalty at death in any event. But, who can now say that the jury would not have fixed the penalty of either or both of the defendants at life imprisonment had the trial judge not presumed to tell the jury that, in his opinion, death would be just punishment if they found the defendants guilty of murder in the first degree. I think we should leave no doubt that, when a trial judge instructs a jury that it is its province to fix the defendant's penalty at death or life imprisonment, upon finding him guilty of murder in the first degree, the court has then said all that it properly may say with respect to the penalty and its determination. To that end, I would reverse the judgment and direct a new trial.