Commonwealth *v.* Edwards, Appellant.

Argued November 8, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Thomas Nardello,* with him *John R. Meade,* for appellant.

*Samuel Dash,* with him *Michael von Moschzisker,* First Assistant District Attorneys and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, January 3, 1955:

The defendant was indicted and tried for murder for a killing committed in the perpetration of a robbery. The jury found him guilty of murder in the first degree and fixed the penalty at death. On this appeal from the judgment of sentence, the defendant assigns two alleged trial errors. He does not assert, however, that they entitle him to a new trial. His counsel frankly state that the seven witnesses called by the defendant (he himself did not take the stand) were produced "in an effort to raise the issue of punishment." Appellant's sole contention is that the matters whereof he now complains helped motivate the jury in fixing the penalty at death rather than life imprisonment and that, consequently, this court should substitute the latter penalty for the former. But, that, we are without lawful power to do.

Section 701 of The Penal Code of 1939, P. L. 872, 18 PS §4701, vests in the jury the duty of fixing the penalty between death and life imprisonment upon a conviction of first degree murder. No discretion is allowed the trial court in sentencing for first degree murder where the penalty has been fixed by the jury. Nor has this court, upon the review of a judgment of sentence for first degree murder, which was imposed in accordance with the jury's verdict, any legal warrant to reduce the penalty so fixed: *Commonwealth v. Taranow,* 359 Pa. 342, 344-345, 59 A. 2d 53; *Commonwealth v. Neill,* 362 Pa. 507, 518, 67 A. 2d 276; *Commonwealth v. Zietz,* 364 Pa. 294, 300, 72 A. 2d 282; and *Commonwealth v. Carluccetti,* 369 Pa. 190, 206, 85 A. 2d 391. For this court to assume to act otherwise

would unconstitutionally trench upon the province of the Board of Pardons which functions as an agency of another coordinate branch of our State government.

In *Commonwealth v. Neill,* supra, where a conviction of first degree murder with penalty of death was affirmed, our present Chief Justice, in speaking for the court, aptly concluded his opinion with the succinct statement that "The jury . . . imposed the penalty of death and, since it is they in whom the statute vests discretion to fix the penalty, it is not for this Court to review their decision." Or, as stated elsewhere by the same jurist,—"Whether the jury exercised a wise discretion in fixing the penalty at death is not a matter for this Court to determine": *Commonwealth v. Simmons,* 361 Pa. 391, 405, 65 A. 2d 353. The lack of power in a court to change the penalty as specified by the jury for a conviction of first degree murder has been scrupulously regarded by this court ever since the duty of fixing the penalty in capital cases was first reposed in the jury by the Act of May 14, 1925, P. L. 759. Since that date, there has not been a single instance where the penalty for a first degree murder, as fixed by the jury, has been interfered with on appeal—a fact which we have heretofore remarked several times: *Commonwealth v. Taranow; Commonwealth v. Zietz;* and *Commonwealth v. Carluccetti,* supra.

There are two instances, neither of which is presently germane, where this court reduced the penalty of death to life imprisonment. But, in each, it was *the trial court* which both determined the degree of the murder and fixed the penalty therefor, following the accused's plea of guilty generally to the charge of murder; in short, the penalty was not one fixed by a jury: see *Commonwealth v. Garramone,* 307 Pa. 507, 515, 161 A. 733; and *Commonwealth v. Irelan,* 341 Pa. 43, 47, 17 A. 2d 897. These cases were concerned solely

with the sentencing court's exercise of a judicial discretion which, of course, is always a subject of appellate review. Cf. also *Commonwealth v. Givens,* 363 Pa. 141, 147, 69 A. 2d 142; *Commonwealth v. Elliott,* 371 Pa. 70, 76-77, 89 A. 2d 782; and *Commonwealth v. Phillips,* 372 Pa. 223, 228, 93 A. 2d 455.

However, if the admission or rejection of evidence at trial can be considered to have been harmful to the defendant in connection with the jury's fixing of the penalty, then we may properly reverse the judgment of sentence on the ground of trial error and remand the case for retrial: see, e.g., *Commonwealth v. Jones,* 355 Pa. 594, 598, 50 A. 2d 342. On that basis, we proceed to a consideration of the errors here assigned.

The appellant charges that the trial judge (1) did not treat adequately with the evidence of drunkenness, adduced by the defendant, in its relation to the question of penalty and (2) erred in admitting in evidence a statement made by the victim while being transported from the scene of the crime to the hospital, the effect of the testimony being to create hostility toward the defendant in the minds of the jurors.

The felonious assault occurred at five o'clock in the morning in the course of the defendant's planned robbery of the victim. The testimony adduced by the defendant related, almost in its entirety, to his drinking and drunkenness the afternoon and night before the fatal shooting. The learned trial judge, after correctly instructing the jury that drunkenness does not exculpate for the commission of a crime, went on to explain that the one instance in which drunkenness is of importance, so far as the substantive offense is concerned, is in determining the degree of the crime "where the defendant is charged with murder which involves a wilful, deliberate and premeditated killing, with specific intent to take life." The trial judge told the jury

that, if the defendant's drunkenness was such that he was incapable of forming a specific intent to take life, then the homicide could not be raised above second degree murder. But, the court further properly instructed the jury in the instant case that they had nothing to do with a specific intent to take life as the killing, here involved, was committed in the perpetration of a robbery—a fact which the defendant's confession not only freely admitted but described in detail. The court's charge in this respect was in strict accord with our pronouncement in *Commonwealth v. Simmons,* supra, that "Where . . . a murder is committed in the perpetration of a robbery or a burglary it is, irrespective of any question of intent, murder in the first degree, and therefore the fact that this defendant may have been drinking to excess was of no legal significance as bearing upon the degree of his crime: Commonwealth v. Wooding, 355 Pa. 555, 557, 50 A. 2d 328, 329."

The court next instructed the jury that ". . . you have the duty to consider whether or not there are any circumstances in the happening of the crime which would mitigate the punishment and lead you to determine upon the lesser of the two punishments, namely, life imprisonment. In that connection, and in that connection only, it has been urged by the defendant . . . that he had been drinking a quantity of liquor and beer for a period of time, but the latest period of time related by any of the witnesses was somewhere around midnight of August 30th and 31st, whereas the Commonwealth seems to have established that the actual killing took place at about five o'clock in the morning, some five hours later. In that connection you will have to determine what weight you will give to the testimony as to the quantity of liquor consumed by the defendant, what, if any, effect you think it had on him, from the description of his physical exhibitions, his al-

leged staggering, his alleged boisterousness, thick conversation and his entire behavior . . . ."

What the learned trial judge thus charged the jury was both correct and adequate. And, defendant's counsel must have so regarded it; they took no exception to it; nor did they request anything additional. What we said in *Commonwealth v. Simmons,* supra, is particularly apposite,—"It is true, as defendant argues, that the question of intoxication was important in connection with the determination of the penalty, and it is said that the court should have stressed this phase of the matter to the jury, but the element of intoxication and all other possibly mitigating circumstances were covered by the court's statement in its charge, several times repeated, that the jury were to determine the penalty only as the result of a full consideration of *all* the facts and circumstances disclosed by the testimony and *all* the information brought out about him at the trial; this would include his mental capacity and his state of intoxication as tending to prove a condition of diminished responsibility; it was not necessary for the trial judge to discuss in detail each of the factors, pro and con, that would properly enter into their consideration of the penalty to be imposed [citing *Commonwealth v. Wooding,* supra]." Here, likewise, the jury were instructed that, should they find the defendant guilty of murder in the first degree, then "if from all the evidence in the case you find circumstances of mitigation which would lead you to inflict or impose the lesser punishment then you would have the right to impose the penalty of life imprisonment" and, further, if "you feel that the defendant is guilty of the first degree and that there are mitigating circumstances and that the lesser punishment is required under the circumstances, it is equally your duty, and you should be equally courageous to say so

by your verdict." There is obviously not the slightest merit in the appellant's first assignment.

The killing took place about 5 A.M. in an upstairs bedroom of the decedent's residence. The time was fixed by two residents of the neighborhood each of whom testified that he heard loud talk followed by four shots fired. The police were summoned and a police radio car containing two policemen arrived at the scene of the crime in three to four minutes. They found the victim, Isaac Teitelbaum, staggering in his bedroom, grievously wounded. One of the shots struck Teitelbaum in the mouth, plowing his tongue and passing through and out the back of his neck, seriously injuring his tongue and the wall of his throat. He was bleeding from the mouth; there was blood down the front of his pajamas and a pool of blood on the floor. He seemed to want to say something, but it was difficult for him to talk. He was "more or less gasping" as he tried to communicate something to the policeman. They started at once to take him to the hospital in their car. On the way there, a distance of some eight blocks, Teitelbaum did manage to say in the hearing of both policemen,—"I offered the robber twelve dollars and begged him not to shoot." Within a few minutes after they arrived at the hospital, the physician in charge forebade the police to question Teitelbaum because of the serious hemorrhaging that had set in. He died from shock and loss of blood less than two hours later.

Over objection of defendant's counsel, the trial judge admitted in evidence, as part of the res gestae of the shooting, the testimony of the policemen as to the deceased's statement. The ruling was manifestly correct. The statement was clearly qualified for admission in evidence under the res gestae rule. It emanated from the lips of the victim under the shock and

excitement of the inflicted violence which impelled its utterance and so soon thereafter that the continuity was not broken. It was obviously spontaneous, having been uttered under circumstances which precluded the idea of reflection, premeditation or design: see *Commonwealth v. Gardner*, 282 Pa. 458, 465-467, 128 A. 87.

Furthermore, admission of the statement in evidence could well be justified on the ground that it was a dying declaration. In *Commonwealth v. Guida*, 298 Pa. 370, 376, 148 A. 501, we said that "Wherever the victim of an assault is in a dying condition, and realizes it his statements concerning the cause of his injuries are admissible in evidence. That he is in such condition may be shown by the nature of his wounds and the result thereof. . . . As stated in Wigmore on Evidence (2d ed.), volume 3, page 172: 'We may avail ourselves of any means of inferring the existence of such knowledge [that the declarant knew he was about to die] ; and if, in a given case, the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently attained. Such is the settled judicial attitude.' It is not necessary for the declarant to state that his declarations are made under a sense of impending dissolution [citing cases]." In *Commonwealth v. Knable*, 369 Pa. 171, 175, 85 A. 2d 114, we more recently stated that "To validate a dying declaration it is not necessary that the wounded man expressly say that he knows that he is dying, it suffices, if at the time the declaration is made, the declarant believed he was in fact dying and that death . . . did actually ensue." And, the belief that he was dying may be inferred from the certainly fatal character of his wound and its consequent physiological effect upon him: see *Commonwealth v. Puntario*, 271 Pa. 501, 505, 115 A. 831; *Commonwealth v. Peyton*, 360 Pa. 441, 447-448, 62 A. 2d 37; and *Commonwealth v.*

*Plubell,* 367 Pa. 452, 456-457, 80 A. 2d 825. The fatal wounds and attendant shock from which Teitelbaum was suffering fully warranted the inference that, when he made the statement in the hearing of the policemen, he was conscious of the imminence of his impending death. On either ground, the appellant's second assignment is equally without merit.

We have carefully examined the entire record and find that it contains the ingredients of first degree murder. The defendant's voluntary confession which was introduced against him at trial without objection and which he at no time repudiated or impeached in the slightest degree confirms his guilt of first degree murder. The case was painstakingly tried and was submitted to the jury in a clear, impartial and comprehensive charge. The defendant received the fair trial to which he was entitled, and the evidence supports the jury's verdict.

The judgment of sentence is affirmed.

---

OPINION BY MR. JUSTICE MUSMANNO, CONCURRING AND DISSENTING IN PART:

I concur in the decision of the Majority. I see no mitigating feature in the defendant's case. His crime was dastardly, foul and wanton. He destroyed human life for his own ignoble and sordid gain. I object, however, to one statement in the Majority Opinion. In referring to the defendant's application to this Court that we substitute life imprisonment for the death sentence imposed in the court below, the Majority says: "that, we are without lawful power to do."

I do not agree that this Court is without that power. Even though this may not be the case for intervention of that character, I believe it is serious error to declare that in no case after a jury's verdict may the Supreme

Court of Pennsylvania substitute life imprisonment for death. I fear that the constant repetition of this error will finally enthrone it as authority, not because of any inherent law, logic or justice in the utterance, but simply because of the numerousness with which it is proclaimed. In the case of *Commonwealth v. Onda,* 376 Pa. 405, this Court stated that it had all the powers exercised by the Court of King's Bench in England and that under those practically unlimited powers "it protects the liberty of the subject, *by speedy and summary interposition.*" In a demonstration of that awesome power, this Court prohibited the Court of Quarter Sessions of Allegheny County from imposing sentence on a convicted Communist seditionist.*

Taking the pronouncement of this Court in the *Onda* case and other cases as binding precedents, it is difficult to understand how the Majority can say that it lacks power to transform a sentence of death into life imprisonment regardless of arguments advanced in behalf of such transformation. If this Court can and does reduce money verdicts in civil cases on the proposition that its conscience is shocked because of the size of the verdict, it is shocking to say that in the proper case and where justice requires it (and this is not that case), it cannot save human life.

It is admitted that this Court has, or at least exercises, the power to change a death sentence into life imprisonment where the penalty has been fixed by

---

* The tremendous power of this Court was exercised to the extent that although the convicted Communist seditionist in that case petitioned for only four months delay, almost a year has now passed since his petition and Onda still enjoys the asylum of the State of New York, to which he fled in order to avoid receiving the sentence he merited for the heinous crime of seeking to overthrow the government of the United States and the Commonwealth of Pennsylvania.

three judges. If, in the opinion of this Court, three learned, trained and experienced judges may err, why exclude the possibility that twelve laymen might err?

I believe that it is necessary that this expression of dissent be written, filed and printed so that the legal world may know that this Court is not of one mind when it says that it may not save the life of a convicted person when justice demands that it be done.