**UNITED STATES of America ex rel. Cleveland THOMPSON, Appellant,**

v.

**Grant F. PRICE, Warden of Allegheny County Jail, Pittsburgh, Pa., Angelo C. Cavell, Warden of Western State Penitentiary, Pittsburgh, Pa.**

United States Court of Appeals Third Circuit.

No. 12481.

Argued May 8, 1958.

Decided Aug. 14, 1958.

Rehearing Denied Sept. 29, 1958.

Morton B. DeBroff, Pittsburgh, Pa., for appellant.

Frank P. Lawley, Jr., Deputy Atty. Gen. (Samuel Strauss, Asst. Dist. Atty., Edward C. Boyle, Dist. Atty., Pittsburgh, Pa., Thomas D. McBride, Atty. Gen., on the brief), for appellees.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The relator, Cleveland Thompson, was convicted in January, 1950, by a jury in a Pennsylvania court of the murder of Wallace Russell, who died as a result of wounds received in a shooting which occurred on September 13, 1949, in a drinking place known as the Barbary Coast Club in Pittsburgh, Pennsylvania. From a judgment imposing sentence of death he appealed to the Supreme Court of Pennsylvania which affirmed the judgment and sentence. Commonwealth v. Thompson, 1951, 367 Pa. 102, 79 A.2d 401, certiorari denied 342 U.S. 835, 72 S.Ct. 58, 96 L.Ed. 631. Thereafter he repeatedly sought writs of habeas corpus upon one of which he ultimately secured a new trial.[1]

At the relator's second trial in May, 1956 he did not testify in his own defense. In the course of that trial the Commonwealth offered in evidence a record indicating that the relator, under the

1. It appears that a writ of habeas corpus was sought on the ground that his counsel was incompetent, which was denied by the Supreme Court of Pennsylvania and certiorari denied, Thompson v. Pennsylvania, 1952, 342 U.S. 929, 72 S.Ct. 370, 96 L.Ed. 692. A writ on this basis was also denied in the federal courts. United States ex rel. Thompson v. Dye, 3 Cir., 1953, 203 F.2d 429, certiorari denied 1953, 345 U.S. 960, 73 S.Ct. 946, 97 L. Ed. 1380. He again sought the writ on

alias of Robert Patterson, had been convicted of felonious assault and sentenced to the Allegheny County Work House for a term of 6 to 18 months. No objection was made by the relator to the admission of the record of this conviction. The Commonwealth also offered in evidence the record of a general court-martial, dated May 23, 1943, convened at Whittington Barracks in England, which was admitted over the objection of the relator. This record indicated that the relator had pleaded guilty to one specification of felonious shooting with intent to kill and had been found guilty under two other specifications of shooting and wounding fellow soldiers. During the relator's second trial, by agreement of counsel, an extract of his testimony taken at his first trial was read to the jury. In that testimony he confirmed the fact that in 1942, when a member of the armed forces, he had been court-martialed in England and disciplined. The jury for the second time found the relator guilty of murder in the first degree and again fixed the penalty at death. Judgment was thereupon entered sentencing him to death. On appeal to the Supreme Court of Pennsylvania the relator assigned as error the reception into evidence of his court-martial record but the Supreme Court held that it was properly admitted as an aid to the jury in fixing the penalty. One judge dissented. Commonwealth v. Thompson, 1957, 389 Pa. 382, 133 A.2d 207, certiorari denied 1957, 355 U.S. 849, 78 S.Ct. 77, 2 L.Ed.2d 59.

The relator thereafter petitioned the District Court for the Western District of Pennsylvania for a writ of habeas corpus, asserting that the judgment of the Pennsylvania court was void because he had been deprived of due process of law, in violation of the Fourteenth Amendment, by the admission into evidence of the record of the court-martial proceedings during the Commonwealth's case-in-chief. The district court after a hearing dismissed the petition, holding it to be devoid of substantial merit. 156 F.Supp. 578. This appeal followed.

The relator's contention here is that he was denied a fair trial when evidence of offenses not connected with the alleged murder for which he was being tried was received and put before the jury. The Commonwealth says that this evidence did not deprive the relator of a fair trial since it was presented to the jury under proper instructions for the limited purpose only of assisting the jury to fix the relator's punishment, which it was their duty to do in the event that they found him guilty of murder in the first degree.

■■ Under the law of Pennsylvania the jury has the duty of determining the penalty when they convict a defendant of first degree murder. The second paragraph of Section 701 of the Penal Code of 1939 provides:

> "Whoever is convicted of the crime of murder of the first degree is guilty of a felony and shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict. The court shall impose the sentence so fixed, as in other cases. * * *" 18 P.S.(Pa.) § 4701.

The precursor of this statute, the Act of May 14, 1925, P.L. 759, provided:

> "That every person convicted of the crime of murder of the first degree shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict."

the ground that vital testimony favorable to him had been withheld by the Commonwealth at his trial, which was denied by the District Court for the Western District of Pennsylvania, 1953, 113 F.Supp. 807, and on appeal remanded by this court for additional reconsideration by the district court, 1953, 208 F.2d 565. The district court again denied the writ, 1954, 123 F.Supp. 759, but on appeal this court directed that a writ of habeas corpus should issue, 1955, 221 F.2d 763, certiorari denied 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773.

The Act of 1925 was interpreted by the Supreme Court of Pennsylvania to permit the admission of evidence of prior convictions solely for the purpose of enabling the jury, after it has found the accused guilty of first degree murder, to know what manner of man he is and whether he is entitled to mercy when they undertake their task of deciding what penalty should be imposed upon him.[2]

The relator's principal contention on this appeal is that to admit into evidence an unrelated criminal record of the defendant on the theory that the jury will disregard this knowledge when determining his guilt, and yet use it later when determining his punishment, results in such fundamental unfairness that it is a denial of due process of law. He says that the admission into evidence of his prior convictions does violence to the common-law rule which disallows evidence of a defendant's evil character to establish the probability of his guilt, and that the evidence of his prior convictions undoubtedly affected the general verdict of guilty and thus militated against him.

Prior to the enactment of the Act of May 14, 1925 a conviction of first degree murder in Pennsylvania always called for the death penalty. That Act, as we have seen, established an additional penalty, life imprisonment, and placed upon the jury the responsibility of fixing the punishment when it finds a defendant guilty of first degree murder. In Commonwealth v. Parker, 1928, 294 Pa. 144, 151–155, 143 A. 904, 906–907, Chief Justice Von Moschzisker gave full consideration to the effect upon the admissibility of evidence of prior convictions under the Act of the rule of evidence that in the trial of a defendant for a crime, evidence of other independent, unconnected offenses committed by him is not admissible to establish his guilt of the crime for which he is on trial. The Chief Justice stated that since the statute required the jurors to assess the punishment and permitted them to extend mercy in a proper case by reducing the penalty to life imprisonment, the jury should be permitted to have the same sort of information that a judge considers when he decides as to the punishment for crime. But since in Pennsylvania the jurors may not render piecemeal verdicts there is no provision for separate inquiry. Hence, concluded the Chief Justice, their single verdict must include both their finding as to the defendant's guilt and their determination as to the penalty to be imposed upon him.

As we have seen, the General Assembly of Pennsylvania when it enacted the Penal Code of 1939 carried into section 701 the duty of the jury to determine the penalty in first degree murder cases "by its verdict". The construction previously given the Act of May 14, 1925 was applied by the Pennsylvania Supreme Court to section 701 in later murder cases. See the cases cited by the Supreme Court of Pennsylvania on the relator's second appeal. Commonwealth v. Thompson, 1957, 389 Pa. 382, 399–400, 133 A.2d 207, 216. The relator contends that the statute thus construed is unconstitutional. Basically the question is whether this Pennsylvania procedure offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." If so it would violate the due process clause of the Fourteenth Amendment. Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674.

It is well settled that no particular form of procedure in state criminal trials is guaranteed by the due process clause of the Fourteenth Amendment.[3]

2. Commonwealth v. Parker, 1928, 294 Pa. 144, 143 A. 904; Commonwealth v. Dague, 1930, 302 Pa. 13, 152 A. 839; Commonwealth v. Flood, 1930, 302 Pa. 190, 153 A. 152; Commonwealth v. Kurutz, 1933, 312 Pa. 343, 168 A. 28.

3. Walker v. Sauvinet, 1875, 92 U.S. 90, 23 L.Ed. 678; Hurtado v. People of State of California, 1884, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232; Maxwell v. Dow, 1900, 176 U.S. 581, 20 S.Ct. 448,

On the contrary the Supreme Court tells us that "it has long been recognized as the very essence of our federalism that the State should have the widest latitude in the administration of their own systems of criminal justice." Hoag v. State of New Jersey, 1958, 356 U.S. 464, 468, 78 S.Ct. 829, 833, 2 L.Ed.2d 913; Cicenia v. Lagay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523. We conclude that the Pennsylvania procedure here under attack does not pass the bounds laid down for state procedure by the due process clause. This is, of course, not to say that we would approve the procedure if its propriety were open to us. On the contrary, we think that it would be very much better practice to permit the jury to consider first the guilt of the accused and then, after rendering a verdict of guilty, to receive evidence and render a second verdict on the question of penalty. See the dissenting opinion of Justice Musmanno on the relator's second appeal. Commonwealth v. Thompson, 1957, 389 Pa. 382, 405, 133 A.2d 207, 219; 1 Wigmore on Evidence (3d ed.) § 194b, p. 661; McBride and Sikov, The Use of Prior Convictions Against Criminal Defendants in Pennsylvania, 11 U. of Pitt.L.Rev. 119, 128 (1949); Comment, Robert Allen Sedler, 19 U. of Pitt.L.Rev. 666 (1958).

■■■ The relator's remaining contention is that even though the Pennsylvania procedure with respect to the admission of evidence of prior convictions in first degree murder cases is constitutional, the record of his court-martial conviction was not evidence of a prior conviction, within the meaning of that term as used by the Supreme Court of Pennsylvania, since that conviction was not the judgment of a civilian criminal court and because a court-martial proceeding, under the former Articles of War, lacked the constitutional safeguards present in a civilian trial. The answer to this argument is that it is settled that the judgment of a court-martial is to be accorded the same finality and conclusive-

ness, as to the issues there involved, as the judgment of a civilian court. Grafton v. United States, 1907, 206 U.S. 333, 345–348, 27 S.Ct. 749, 51 L.Ed. 1084. Indeed it was so held as a matter of Pennsylvania law by the Supreme Court of Pennsylvania in the relator's own case. Commonwealth v. Thompson, 1957, 389 Pa. 382, 401–404, 133 A.2d 207, 217–218. Accordingly, the distinction which the relator seeks to draw between a conviction by a court-martial and a conviction by a civilian court cannot be sustained.

The judgment of the district court dismissing the petition for writ of habeas corpus will be affirmed.

HASTIE, Circuit Judge (concurring).

I concur only because the record of the defendant's prior conviction in Allegheny County was introduced in evidence without objection, and the record of his conviction by a court martial confirmed his own statement admitting this military offense which had been introduced in evidence with the consent of defense counsel.

As to the impropriety of the Pennsylvania practice of permitting a jury in a capital case to receive evidence of prior unrelated crime before it decides upon the guilt of the accused, the opinion of this court expresses the view "that it would be very much better practice to permit the jury to consider first the guilt of the accused and then, after rendering a verdict of guilty, to receive evidence and render a second verdict on the question of penalty." I would go farther. Because men often cannot or will not channel their thinking as directed by another person, even a learned, solemn and berobed judge, there is always some risk that legally improper considerations, if known to the jurors, will influence their verdict. A procedure which greatly magnifies this risk, practically inviting the improper use of evidence, in a capital case raises a serious issue of fundamental fairness.

44 L.Ed. 597; Rogers v. Peck, 1905, 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256;

Twining v. State of New Jersey, 1908, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97.

Pennsylvania has adopted a procedural scheme which in its nature makes it at least very probable that, despite any contrary admonition by the trial judge, the jury, in considering whether the accused is innocent or guilty, will be influenced by their knowledge of his prior conviction of unrelated crimes. Perhaps there are persons who can put this knowledge to one side until guilt is determined and then recall it to mind for the sole purpose of deciding what the sentence shall be. But certainly, there is the gravest danger that this feat will be beyond the psychological capacity of the jurors, however intelligent or fair minded they may be. Moreover, if Pennsylvania had chosen to do so, all of this could have been avoided, as this court points out, simply by submitting the evidence of prior conviction to the jury after, rather than before, decision upon the guilt of the accused. I am unable to avoid the conclusion that a procedure so likely to prejudice the accused and at the same time so easy to avoid without the sacrifice of any interest of the state is fundamentally unfair. This view of the matter finds strong support in opinions expressed from time to time about this very procedure by the present Chief Justice of Pennsylvania and by his colleagues, Justice Bell and Justice Musmanno. See references in the dissenting opinion of Justice Musmanno in this case, Commonwealth v. Thompson, 1957, 389 Pa. 382, 405, 133 A.2d 207, 219. These considerations underlie my conclusion that only the acquiescence of the defense in the jury's learning about the prior convictions prevents the present claim of denial of due process of law from being well taken.

Finally, were I vested with state executive power of commutation, and not under the technical limitations of very restricted federal power over state convictions, I would not hesitate to commute the death sentence in this case and in every other case where the jury has been encouraged to bring in a verdict of guilty of first degree murder by the introduction of prejudicial evidence of prior crime. In present circumstances such mitigation of punishment is the only relief available from a practice which judges have repeatedly deplored and disapproved as prejudicial even though the practice has not yet been outlawed.

### On Petition for Rehearing

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

### PER CURIAM.

The petition for rehearing raises no questions which were not fully argued to the court. We think that they were correctly decided. Since no judge who participated in the decision desires rehearing and four circuit judges have not asked for rehearing in banc, the petition for rehearing will be denied.

### BIGGS, Chief Judge (dissenting).

The impropriety of the Pennsylvania practice demonstrated by the circumstances of this case is so gross and results in such fundamental unfairness as to constitute a denial of due process of law. The consent and acquiescence of defendant's counsel at his murder trial to the receipt of evidence of his commission of prior unrelated crimes by the jury before that body decided the guilt or innocence of the defendant cannot be considered a waiver of his constitutional right in the absence of any showing that the defendant gave specific assent to the course pursued by his counsel. Himmelfarb v. United States, 9 Cir., 175 F.2d 924, 931–932, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. Cf. United States v. El Rancho Adolphus Products, Inc., D.C.W.D.Pa.1956, 140 F. Supp. 645, affirmed United States v. Hohensee, 3 Cir., 243 F.2d 367, certiorari denied 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136, rehearing denied, 1957, 354 U.S. 927, 77 S.Ct. 1376, 1 L.Ed.2d 1441. For these reasons I dissent from the order denying rehearing.

I am authorized to state that Judge McLAUGHLIN joins in this dissent.