## Commonwealth *v.* Cater, Appellant.

Argued May 4, 1960.   Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

reargument refused January 3, 1961.

50

*W. Bradley Ward,* with him *Joseph L. Ehrenreich,* for appellant.

*Garfield W. Levy,* with him *Irwin Apfel,* for appellant.

*Arlen Specter,* Assistant District Attorney, with him *Domenick Vitullo,* Assistant District Attorney, *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. BENJAMIN R. JONES, November 15, 1960:

For the second time we have before us for determination the propriety of the imposition of death sentences upon Cater and Rivers, the present appellants, after their conviction of murder in the first degree by a three-judge court in Philadelphia County.

The pertinent facts surrounding this homicide and the trial were stated by Mr. Justice COHEN in *Commonwealth v. Cater et al.,* 396 Pa. 172, 175, 152 A. 2d 259:

"On the evening of March 26, 1957, three young men planned and perpetrated a robbery at the pharmacy of Jacob Viner, a North Philadelphia druggist. One of the robbers accompanied Viner to the rear of the establishment, and after warning the druggist to 'shut-up,' shot and killed him in the presence of his wife. The pharmacy's cash register was rifled of some $34 and the trio made good their escape.

"Subsequently, James Cater, Robert Lee Williams and George Lee Rivers, the appellants herein, were

arrested and indicted for the murder of Viner. All three, confessing to their participation in the crime, entered pleas of guilty to murder generally, whereupon the trial court adjudged each to be guilty of murder in the first degree . . . After deliberation upon the entire record, the trial court sentenced each defendant to death in the electric chair."

Upon appeal, a majority of this Court found certain "factual errors" in the opinion of the lower court wherein that court assessed its reasons for the imposition of the death sentences upon Cater and Rivers, and we were unable to determine whether "any or all of these factual errors influenced the court below in its decision to impose the death sentence upon both Cater and Rivers." While we affirmed the judgment and sentence as to Williams,[1] as to Cater and Rivers we vacated the judgment of sentence of death and remitted the record to the court below for the purpose of resentencing them. The court below then heard additional testimony and, after deliberation, again sentenced Cater and Rivers to death. From such judgments of sentence these appeals were taken.

Appellants present two contentions: (1) that the court which imposed the sentences was improperly constituted and (2) that under the instant circumstances the imposition of death sentences constitutes an abuse of discretion.

In respect to appellants' first contention certain factual data is pertinent. Appellants entered pleas of guilty before a three-judge court composed of Judges WATERS, MACNEILLE and SPORKIN, and this court determined the degree of the crime to be murder of the first degree and imposed the death sentences. While appellants' first appeals were pending before this Court, Judge MACNEILLE resigned from the bench.

[1] Williams has been executed.

After our determination of the first appeals and on September 18, 1959, Judges WATERS and SPORKIN [the remaining members of the court whose sentences had been vacated] invited Judge MILNER to sit with them for the purpose of resentencing the appellants and Judge MILNER accepted this invitation. Appellants' counsel at that time objected: "We take the position . . . that the Court, which is the fact finding tribunal, which has the additional duty of applying the law to those facts as found, in discharging the obligation imposed by the statute to determine the degree of the crime, has not only the duty, but it is the only Court that can discharge the duty of imposing the sentence, or stated differently, the Court, we contend, that finds the degree of guilt must consist of the same Judges as impose the punishment." This objection was overruled.

Judge MILNER stated: "I may say to you that I have carefully read every word of the record in this case, and I am familiar with the record and facts". Judge WATERS inquired of counsel "Is it your position now, . . . having overruled your objection, that Judge MILNER should hear evidence not only as to the sentence but as to whether or not murder in the first degree was committed here?" To this inquiry Cater's counsel [later joined in by Rivers' counsel] stated: "My answer . . . is that in the light of your Honors' ruling with respect to the objections we have made . . . and without prejudice to the position we have taken in that regard, I say . . . we don't take the position that the record as already made should be taken de novo, that we are satisfied, subject to our objection, to have your Honors, Judge WATERS and Judge SPORKIN, review the record as made as well as Judge MILNER review the printed record as already made some two years ago without a repetition of anything that appears in that

record, subject further, sirs, to the right which we respectfully ask to submit additional evidence . . . at a further hearing in the light of the fact that I will have a motion to make with respect to another phase of the case."

The Penal Code (Act of June 24, 1939, P.L. 872, §701, 18 PS §4701) provides, inter alia: "If such person [one indicted for murder] is convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly" and "In cases of pleas of guilty, the court, where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life". Rule 43 of the Court of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace of Philadelphia County provides: "Pleas of guilty to indictments for murder shall be heard by a court en banc, consisting of the judge before whom the plea is entered and two other judges, who shall be called in by him for that purpose".

In the absence of such a rule, a single judge can receive a plea of guilty of murder, fix the degree and impose sentence: *Commonwealth v. Shawell,* 325 Pa. 497, 191 A. 17; *Commonwealth v. Garramone,* 307 Pa. 507, 161 A. 733. The requirement for a three-judge court is imposed by a local rule of court in Philadelphia County; there is no *constitutional* requirement of a three-judge court in such circumstances.

*Commonwealth v. Petrillo,* 340 Pa. 33, 16 A. 2d 50, is somewhat apposite: Petrillo after proceeding to trial on a non-guilty plea before a judge and jury in Philadelphia County, changed his plea to guilty and agreed that testimony already taken did not have to be taken by a three-judge court convened under Rule 43 but that the two additional judges could read such testimony.

Additional testimony was taken by the three-judge court and thereafter the trial judge died. The two surviving judges found Petrillo guilty of murder in the first degree and imposed the death penalty, stating that, prior to the death of the trial judge, the three judges had consulted, considered the evidence, agreed on the degree of guilt and unanimously decided to impose the death penalty. This Court affirmed the conviction and sentence, stating, inter alia (p. 47): "In determining what the penalty shall be after convictions in criminal cases, courts have a wide latitude in considering facts, whether or not these facts are produced by witnesses whom the members of the court see and hear. In many jurisdictions courts in determining proper sentences consider official records and the reports of probation officers, psychiatrists and others. This court without seeing or hearing any witnesses can determine whether a sentence of death for murder in the first degree should be reduced to life imprisonment: Com. v. Garramone, 307 Pa. 507, 161 A. 733. It would be carrying technicalities to absurd length to hold that on the only substantial issue before the tribunal below, which was: 'What is the appropriate penalty to impose on this self-convicted murderer whom we adjudge to be a first degree murderer?' the tribunal could consider *only* the testimony of witnesses whom they had *all seen* and *heard,* even though the defendant and his counsel had agreed that Judges SMITH and ROSEN, who with Judge MILLAR constituted the court, could read 'the testimony thus far taken,' (and by clear implication base their decision on it together with the other testimony to be received in evidence), 'and thereby avoid the necessity of recalling all these witnesses.' " [Underscoring and comment in parenthesis supplied by the Court].

Under *Petrillo*, Judges WATERS and SPORKIN, alone, could have resentenced appellants. However, Judge MILNER not only read the testimony upon which the original three-judge court found appellants guilty of murder in the first degree and sentenced them to death, and was thoroughly familiar therewith, but he also sat and heard the additional testimony. Furthermore, the action of appellants' counsel in expressing their satisfaction that Judge MILNER review the record of the prior proceedings acted in legal effect as a waiver of the convening of a new three-judge court to fix guilt and sentence. This contention of appellants is without merit.

In determining whether the court below abused its discretion in the imposition of the death sentences we must bear in mind that while the discretion exercised by a trial court in the imposition of the death penalty, after a plea of guilty and a finding of murder in the first degree, is subject to our appellate review, yet on such review the question before us is not whether we would have imposed the same penalty under the circumstances but whether the trial court manifestly abused the discretion imposed upon it by the legislature: *Commonwealth v. Givens*, 363 Pa. 141, 147, 69 A. 2d 142, 144; *Commonwealth v. Elliott*, 371 Pa. 70, 76-77, 89 A. 2d 782, 785; *Commonwealth v. Phillips*, 372 Pa. 223, 228, 93 A. 2d 455, 457.

In *Commonwealth v. Green*, 396 Pa. 137, 150, 151 A. 2d 241, speaking of the exercise of judicial discretion in the imposition of the death penalty, we stated: "an appropriate exercise of judicial discretion as required by the statute contemplates that the death penalty be imposed where all the facts surrounding the criminal act and the criminal actor have been exhaustively considered and where, after such consideration, no other conclusion can be justified than the extermination of

the convicted criminal by death. Determination of the appropriate penalty arrived at in any other manner constitutes an abuse of discretion."

We have carefully examined the instant record and conclude that the court below conscientiously followed the directions given by this Court in *Commonwealth v. Cater*, supra. The court below received and fully considered all the additional evidence presented, including recent reports from the Neuropsychiatric Department of the Court of Quarter Sessions, from independent psychiatrists, from the Board of Education and from county detectives and gave "serious thought to the psychiatric personality and age of each of the defendants". Our independent review of the proceedings supports the conclusion of the sentencing court that it "carefully considered all the evidence, culpatory and exculpatory, incriminating and extenuating, in an unusually complete record."

It is not now nor has it ever been the law of this Commonwealth that a trial court, in the imposition of a criminal sentence, must, as a matter of law, be controlled by the reports and recommendations of psychiatrists (*Commonwealth v. Elliott*, 371 Pa. 70, 77, 78, 89 A. 2d 782; *Commonwealth v. Leamer*, 386 Pa. 485, 489, 490, 126 A. 2d 409; *Commonwealth v. Graves*, 394 Pa. 429, 432, 147 A. 2d 416) nor does age alone constitute a barrier to the imposition of the death penalty (*Commonwealth v. Cavalier*, 284 Pa. 311, 323, 131 A. 229; *Commonwealth v. Zietz*, 364 Pa. 294, 300, 301, 72 A. 2d 282).

We are satisfied that the sentencing court, in accordance with our directions in *Green*, supra, inquired into, examined fully and considered carefully the background of the criminal act as well as the criminal actors.

While we have the authority and the power to reduce a sentence from death to imprisonment for life (Act of June 16, 1836, P.L. 784, §1, 17 PS 41) yet on only three occasions—most exceptional cases—have we exercised such authority and power:[2] *Commonwealth v. Garramone*, 307 Pa. 507, 161 A. 733; *Commonwealth v. Irelan*, 341 Pa. 43, 17 A. 2d 897; *Commonwealth v. Green*, supra. The present situation nowise justifies the exercise of such power to reduce these sentences.

No abuse of discretion appears on the part of the court below. The judgments of sentence are affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

After our disposition in *Commonwealth v. Cater et al.*, 396 Pa. 172, 152 A. 2d 259 (1959), wherein we vacated the judgments of sentences of death as to

---

[2] A distinction is made between the imposition of the death penalty by the trial court after it finds a defendant guilty of first degree murder and the imposition of the death penalty after a jury finds the defendant guilty of first degree murder. As Mr. Justice (now Chief Justice) JONES said in *Commonwealth v. Taranow*, 359 Pa. 342, 344, 345, 59 A. 2d 53: "The fact is that, since juries were first empowered to select the appropriate penalty in first degree murder cases as between death and life imprisonment (Act of May 14, 1925, P.L. 759), there has been no instance where a jury's fixing of the penalty at death (upon a verdict of guilty of murder in the first degree) has been interfered with on appeal. The reason for that is evident. When a jury finds a defendant guilty of the highest grade of crime possible for a felonious homicide, viz., murder in the first degree, it then becomes its province to fix the penalty by its verdict, as provided by the statute; and, when it has done that, it has done its legal duty and its action may not properly be called in question. On the other hand, the discretion exercised by a court in fixing the penalty for a conviction of murder in the first degree, founded upon a plea of guilt, is considered reviewable, as the judicial exercise of a legal discretion is ordinarily reviewable".

appellants James Cater and George Lee Rivers and remitted the records to the court below for re-sentencing, a three judge court re-convened and pursuant to our decision in *Commonwealth v. Green*, 396 Pa. 137, 151 A. 2d 241 (1959), received additional evidence consisting of psychiatric reports, school records, and the report of a county detective who conducted a general investigation of the backgrounds of both appellants. The court, upon further deliberation, again imposed sentences of death upon both appellants. This appeal followed.

In *Commonwealth v. Cater*, supra at 180, we reiterated that the reviewing function of this Court is to see "in every capital case whether the trial court abused its discretion by overlooking pertinent facts or disregarding the force of evidence, or erred in its law." In applying these criteria to the record in that proceeding, we found that the Court en banc had misapplied certain of the evidence in reaching its conclusion as to the sentences to be imposed. It was for that reason that we vacated the judgments of sentence and remitted the records.

I have once more scrutinized the entire record, for "in such a solemn and drastic proceeding there is no room for a scintilla of error," and I am constrained to hold that the court en banc has again erred in arriving at its conclusion. The reasoning with which I find fault can best be indicated by quoting the following language from the lower court's opinion, "Nor can it now be argued that Cater and Rivers were not, in the words of Mr. Justice COHEN, equally responsible with Williams for this homicide. . . . We must interpret the phrase *'equally responsible' to mean equally contributing to the result.* What considerations would impel one to conclude that three men equally responsible for a criminal act are not equally culpable? If

there be any such considerations, we conceive that they must arise from differences in the acts or attitudes of the individual participants in the commission of the crime (*which, if they exist, would negative equal responsibility*), or from differences in the personalities and backgrounds of the participants, aside from the criminal act itself, or from differences in the attitudes of the participants after the commission of the crime which might incline the sentencing authority in the direction of less severity towards one than towards another. We can find nothing in this case to cause us to regard Cater and Rivers as being less responsible than Williams, or less blameworthy." (Emphasis supplied). I considered it patently obvious that our reference to the fact that Cater and Rivers "were equally responsible with Williams" (396 Pa. 172, 176) *in the context of discussing the appellants' guilt of first degree murder under the "felony-murder" rule* was not in the slightest way meant to have any bearing on the separate and distinct determination to be made as to the proper punishment to be imposed. Most apparently the court below seized upon this remark and from it derived the notion that this Court meant to indicate that the three participants were equally *culpable* and should thus receive equal punishment. Nothing could be further from the fact. Quite to the contrary, I had serious doubts (not since allayed) as to the propriety of the imposition of the death sentence under the circumstances surrounding these two boys.

As Mr. Justice BENJAMIN R. JONES well stated in *Commonwealth v. Green,* supra at 149-150, "Both the criminal act and the criminal himself must be thoroughly, completely and exhaustively examined before a court can exercise a *sound* discretion in determining the appropriate penalty. . . . An appropriate exercise of judicial discretion as required by the statute contem-

plates that the death penalty be imposed where *all* the facts surrounding the criminal act and the criminal actor have been exhaustively considered and where, after such consideration, no other conclusion can be justified than the extermination of the convicted criminal by death." Desiring to give the court below the opportunity to make an independent determination free from error, we remitted the records for re-sentencing; but the studied and flagrant misinterpretation of our opinion in the first *Cater* case clearly indicates that the court entertained motives that are not consistent with the responsibilities required by a court in such a solemn and drastic proceeding. I would vacate the sentence of death and remit the record with instructions to sentence appellants to imprisonment for life.

Mr. Justice MUSMANNO and Mr. Justice BOK join in this dissenting opinion.