**UNITED STATES of America ex rel. George Lee RIVERS**

v.

**David N. MYERS, Superintendent, State Correctional Institution at Graterford, Graterford, Pa.**

Misc. No. 2322.

United States District Court
E. D. Pennsylvania.

Oct. 9, 1961.

Donald Goldberg and Garfield W. Levy, Philadelphia, Pa., for Rivers.

Arlen Specter, Asst. Dist. Atty., Philadelphia, Pa., for Myers.

VAN DUSEN, District Judge.

The petition for a writ of habeas corpus asks this court to set aside a death sentence imposed by a three-judge state court after the entry of a plea of guilty to murder in the first degree on the ground that the sentence is "in violation of petitioner's right to due process of law" (par. 15 of the petition). Relator was a participant in a robbery described as follows by the Supreme Court of Pennsylvania in Commonwealth v. Cater et al., 1959, 396 Pa. 172, 175, 152 A.2d 259, 261:[1]

---

[1.] The court used this language at page 176 of 396 Pa., at page 261 of 152 A.2d:

"Under the 'felony-murder' rule, when one person kills another in the perpetration of a common-law felony, the element of legal malice is supplied to the homicide so as to make the homicide a murder. If the felony is one of the class enumerated in Pennsylvania's 'degree of murder' statute, such as robbery, the murder becomes one of the first degree. According-

ly, in the present case Williams, the defendant who actually committed the act, was guilty of murder in the first degree. And since, by operation of the 'coconspirator's rule', the acts of one principal which are in furtherance of the common, unlawful design are attributable to each of his co-felons, Cater and Rivers, the other participants in the drugstore robbery, were equally responsible with Williams for the homicide."

"On the evening of March 26, 1957, three young men planned and perpetrated a robbery at the pharmacy of Jacob Viner, a North Philadelphia druggist. One of the robbers accompanied Viner to the rear of the establishment, and after warning the druggist to 'shut-up,' shot and killed him in the presence of his wife. The pharmacy's cash register was rifled of some $34 and the trio made good their escape."

The Supreme Court of Pennsylvania has affirmed the sentence, Commonwealth v. Cater et al., 1960, 402 Pa. 48, 166 A.2d 44, and the Supreme Court of the United States has denied a petition for a writ of certiorari (P–2), Rivers v. State of Pennsylvania, 1961, 366 U.S. 915, 81 S.Ct. 1090, 6 L.Ed.2d 238.

Ever since Holden v. Hardy, 1898, 169 U.S. 366, 389–390, 18 S.Ct. 383, 387, 42 L.Ed. 780, the Supreme Court of the United States has declined "to define with precision the words 'due process of law' * * * (since) (i)t is sufficient to say that there are certain immutable principles of justice, which inhere in the very idea of free government which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice, and an opportunity of being heard in his defence." See Bute v. People of State of Illinois, 1948, 333 U.S. 640, 648–649, 68 S.Ct. 763, 92 L.Ed. 986. In the Bute case, supra, the court said at pages 649–650 of 333 U.S., at page 768 of 68 S.Ct.:

"The Fourteenth Amendment, however, does not say that no state shall deprive any person of liberty without following the *federal* process of law as prescribed for the federal courts in comparable federal cases. It says merely 'nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *.' This *due* process is not an equivalent for the process of the federal courts or for the process of any particular state * * *. This clause in the Fourteenth Amendment leaves room for much of the freedom which, under the Constitution of the United States and in accordance with its purposes, was originally reserved to the states for their exercise of their own police powers and for their control over the procedure to be followed in criminal trials in their respective courts. It recognizes that differences arise naturally between the procedures in the state courts and those in the federal courts."

The Supreme Court of the United States has frequently emphasized that "it has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice." Hoag v. State of New Jersey, 1958, 356 U.S. 464, 468, 78 S.Ct. 829, 833, 2 L.Ed.2d 913; see United States ex rel. Thompson v. Price, 3 Cir., 1958, 258 F.2d 918, 921–922.

Relator relies on the principle, stated in Townsend v. Burke, 1948, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, that a "careless or designed pronouncement of sentence on a foundation * * * extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, * * * renders the proceeding lacking in due process." This record does not justify the application of the above principle and, hence, this petition must be denied.[2]

2. This conclusion makes it unnecessary to pass upon the Commonwealth's argument that this court has no jurisdiction to consider the above-mentioned principle in a habeas corpus proceeding, as opposed to a proceeding for review of the final judgment of a state's highest appellate court, affirming a criminal sentence, which was involved in the Townsend case, supra. The United States Supreme Court recognized the distinction between such proceedings in the Townsend case, supra, in using this language at page

Relator confessed to his part in the crime and has been represented during the entire litigation by very able and experienced counsel. The sentencing judges showed their realization of the solemn duty resting upon them in such case, using this language at 244b (P–4):

"When the shadow of the electric chair hangs ominously over the courtroom, no one is more keenly aware than the sentencing judges that 'no more awesome duty nor solemn obligation comes within the province of a judge than the decision whether penalty of death or life imprisonment shall be imposed upon a convicted first degree murderer.'"

Relator relies on this alleged inaccurate language in the opinion of the sentencing court, which was filed after the appeal had been docketed in the Supreme Court of Pennsylvania [3] and, hence, his counsel had no opportunity to point out to the sentencing court such inaccuracies:

A. Participants "each knowing of the presence of a loaded gun in their midst" (245b of P–4)

There was no direct testimony that relator knew the gun was loaded. He did know that one of the other participants had a gun [4] (135a, 138–9a of P–3), had on shoes enabling him to run faster (139a of P–3), suggested to his companions that "some quick money" was available at the pharmacy (135a–136a &

145a of P–3), and volunteered to "be the lookout" (136a) since the other participants had had their fingerprints taken and he had not had his taken (139a of P–3). In Townsend v. Burke, supra, the court made clear that the drawing of such an inference (that defendant knew the gun was loaded) [5] from the evidence by a sentencing judge was not a violation of due process of law, using this language at page 741 of 334 U.S., at page 1255 of 68 S.Ct.:

"Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law."

In United States ex rel. Marcial v. Fay, 2 Cir., 1959, 267 F.2d 507, at page 511, the court directed the dismissal of a petition for a writ of habeas corpus, relying on the above-quoted language from the Townsend case, supra, and saying:

"But even if the evidence here sufficed to prove that the sentencing judge had acted under a misapprehension, the mistake was not an inexcusable one like that disclosed in

---

741, of 334 U.S., at page 1255 of 68 S.Ct.:

"The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of *habeas corpus*."

3. It is noted that this opinion was printed in the record on appeal (238b to 247b of P–4) and that relator's counsel presented to the Supreme Court of Pennsylvania, prior to the opinion at 402 Pa. 48, 166 A.2d 44, the same arguments that are presented here. [See briefs for appellants in P–4, P–1 (petition for reargument in Pennsylvania Supreme Court which was refused on 1/3/61; see Commonwealth v. Cater et al., 402 Pa. at page

49, 166 A.2d 44), and last sentence on page 8 of petition for a writ of certiorari, marked P–2.] It is the common practice in the Pennsylvania state courts for the lower court to write its formal opinion after an appeal has been taken and not before the appeal is filed. See par. 15 of answer to petition (Document No. 5).

4. He had seen one of the participants take the gun out of a drawer in his home more than an hour before the robbery. The three participants were together for more than an hour before the robbery (143a of P–3).

5. It would seem quite clear that the sentencing court was entitled to draw the inference that relator knew the gun might be loaded and might be used.

the Townsend case. Here evidence had come in that the victim had said the robbery was with a gun: the defendant testified that it was without a gun. If the sentencing judge made the wrong solution of this conflict, it was at most an error of fact."

B. Participants "equally responsible * * * for this homicide" (242b of P–4)

The opinion of the sentencing court went on to use this language at 242b–243b of P–4:

" 'We must interpret the phrase *"equally responsible" to mean equally contributing to the result.* What considerations would impel one to conclude that three men equally responsible for a criminal act are not equally culpable? If there be any such considerations, we conceive that they must arise from differences in the acts or attitudes of the individual participants in the commission of the crime (*which, if they exist, would negative equal responsibility*), or from differences in the personalities and backgrounds of the participants, aside from the criminal act itself, or from differences in the attitudes of the participants after the commission of the crime which might incline the sentencing authority in the direction of less severity towards one than towards another. We can find nothing in this case to cause us to regard Cater and Rivers as being less responsible than Williams, or less blameworthy.' " Emphasis supplied by Mr. Justice Cohen in his dissenting opinion at 402 Pa. 58–59, 166 A.2d 44.

Relator's counsel objected to this language during the oral argument (it is not mentioned in the petition), apparently relying on the following position taken in the dissenting opinion of Mr. Justice Cohen filed in the Supreme Court of Pennsylvania (402 Pa. at page 59, 166 A. 2d at page 50):

"I considered it patently obvious that our reference to the fact that Cater and Rivers 'were equally responsible with Williams' (396 Pa. 172, 176, 152 A.2d 259, 262) *in the context of discussing the appellants' guilt of first degree murder under the 'felony-murder' rule* was not in the slightest way meant to have any bearing on the separate and distinct determination to be made as to the proper punishment to be imposed. Most apparently the court below seized upon this remark and from it derived the notion that this Court meant to indicate that the three participants were equally *culpable* and should thus receive equal punishment. Nothing could be further from the fact. Quite to the contrary, I had serious doubts (not since allayed) as to the propriety of the imposition of the death sentence under the circumstances surrounding these two boys."

Assuming, without deciding,[6] that the dissenting opinion is correct and that the words used by the sentencing court did not correctly state the Pennsylvania rule to be followed by a sentencing court, the record supports the conclusion of the Supreme Court of Pennsylvania that the sentence was in accordance with Pennsylvania law and justified by the evidence and reasonable inferences therefrom. See Bute v. People of State of Illinois, supra; United States ex rel. Thompson v. Price, supra. This case does not present a "foundation * * * extensively and materially false," as was true in Townsend v. Burke, supra, where the sentencing judge assumed convictions for three separate charges of larceny, each of which had in fact resulted in a verdict or finding of not guilty or in a dismissal of the charge.[7]

---

6. Since the majority of the Pennsylvania Supreme Court affirmed the sentence, without stating that the sentencing court had misstated the state rule, it would appear that there was no such error.

7. Also, there are other distinguishing factors in that case such as "facetiousness" on the part of the sentencing judge. See 334 U.S. at page 740, 68 S.Ct. at page 1255.

In view of the death sentence and the dissenting opinion of three justices of the Pennsylvania Supreme Court,[8] a certificate of probable cause will be granted if applied for promptly, but any application for stay of execution should be submitted to the United States Court of Appeals for the Third Circuit.

### Order.

And now, October 9, 1961, it is ordered that the petition for writ of habeas corpus, filed October 4, 1961, is denied.

---

8. Although such a dissenting opinion is not an opinion of the court, the United States Court of Appeals for the Third Circuit has considered such a dissenting opinion in a habeas corpus case. See United States ex rel. Thompson v. Price, supra, 258 F.2d at page 922.