UNITED STATES of America ex rel. George Lee RIVERS, Appellant,

v.

David N. MYERS, Superintendent, State Correctional Institution at Graterford, Pennsylvania.

No. 13779.

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1961.

Decided April 13, 1962.

Donald Goldberg, Philadelphia, Pa., for appellant.

Arlen Specter, Philadelphia, Pa., for appellee.

Before GOODRICH, STALEY and GANEY, Circuit Judges.

STALEY, Circuit Judge.

Rivers filed a petition for a writ of habeas corpus in the district court in which he asked to have set aside a death sentence imposed by a Pennsylvania court after entry of a plea of guilty to murder generally, alleging that the sentence was imposed in violation of the due process clause. The killing occurred in the course of a 1957 armed robbery of a

North Philadelphia drug store perpetrated by Cater, Williams and Rivers. Williams fired the shot that killed the druggist while Rivers acted as lookout at the door.

Rivers was twice sentenced to death. The first sentence was reversed in Commonwealth of Pennsylvania v. Cater, 396 Pa. 172, 152 A.2d 259 (1959), on the ground that certain of the facts surrounding the killing, as found by the sentencing court and that may have influenced the determination of sentence, were not supported by the record. After additional testimony was taken, Rivers was again sentenced to death, and on appeal that sentence was affirmed by the Pennsylvania Supreme Court. Commonwealth of Pennsylvania v. Williams, 402 Pa. 48, 166 A.2d 44 (1960), cert. denied sub nom. Cater v. Pennsylvania, 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 238 (1961).

Both in the district court and here Rivers contended that the resentencing court erroneously concluded that the decision in Commonwealth of Pennsylvania v. Cater, supra, required it to treat all participants in the robbery alike in sentencing them as all were equally guilty of murder under the felony murder rule. Further, that the resentencing court, without any basis in the record, found that Rivers knew Williams was carrying a loaded gun during the robbery. Lastly, that he was in effect denied the right to counsel because the resentencing court did not file its opinion setting forth the alleged misstatement of fact until February 2, 1960, after an appeal had been taken to the Pennsylvania Supreme Court on December 1, 1959. The appeal was argued on May 4, 1960. The result, Rivers says, was that he was denied an opportunity to challenge, before the resentencing court, the facts which that court relied on when imposing sentence. In this regard, it is urged that Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), is controlling. It is our conclusion that the district court correctly denied the petition.

■ Rivers' first contention requires little discussion. From a review of the procedure followed by the resentencing court and its opinion, it becomes unmistakably clear that the peculiar facts surrounding each of the individual defendants, as well as the common facts of the crime, were considered in meting out punishment. During the resentencing hearing, the court re-examined confessions made by the defendants, stating that such confessions would be used only against the particular defendant. Separate statements were made by each defendant's counsel. The resentencing court's opinion discloses that it relied on different facts in the case of each defendant as a basis for imposing the death penalty. An examination of the majority and dissenting opinions in Commonwealth of Pennsylvania v. Williams, supra, clearly indicates that the points raised here were fully considered by the Pennsylvania Supreme Court and resolved against Rivers. The court there did not think that the resentencing court misconstrued the prior decision in Commonwealth of Pennsylvania v. Cater, supra.

■ As a general rule, the sufficiency of evidence supporting the finding of a state trial court is not subject to review by habeas corpus. United States ex rel. Holly v. Claudy, 101 F.Supp. 751 (W.D.Pa.), aff'd, 196 F.2d 1017 (C.A.3, 1952); Meyers v. Welch, 179 F.2d 707 (C.A.4, 1950). However, a constitutional basis for a federal intervention exists where there is an entire lack of evidence to support a finding, thereby making the trial fundamentally unfair. Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); United States ex rel. Brogan v. Martin, 238 F.2d 236 (C.A.3), cert. denied, 351 U.S. 928, 76 S.Ct. 785 (1956); Garrison v. Commonwealth of Pennsylvania, 130 F.Supp. 70 (M.D.Pa.1955). We think that not only has Rivers failed to meet this burden, but further that the challenged finding, based on our independent review of the record, is fully supported. There is no indication that the robbery was spontaneous or unplanned. The relevant occurrences began on the day of the killing

when Rivers went to Cater's room where he saw Cater get a gun out of a dresser drawer. While there, Cater changed his shoes, as did Rivers later, in order to make it easier for him to run. In his confession Rivers indicated that he spent most of the day with Williams and Cater and that while walking down the street with them, he said, upon reaching the drug store: "There's some quick money." Rivers told them that he would act as the lookout and opened the door to the drug store since both Cater and Williams had been fingerprinted. After the killing, all of them went to a friend's house, divided up the loot, and rode past the scene of the killing in a taxicab as a crowd of people gathered there. Thereafter, Rivers and Cater sought out Williams, who had left the cab before they did, and obtained a gun from him which Rivers said looked like the gun he saw Williams with before the shooting. Rivers admitted this after first denying in a written confession that he had ever seen Williams or Cater with a gun.

In addition, Rivers did not assert, either in the first or second sentencing procedures, that he did not know that a loaded gun was being used in the robbery. His position was that he was not the man who actually carried the gun and pulled the trigger. This failure to deny knowledge that Williams was carrying a gun was entirely consistent with the contents of a neuropsychiatric report that Rivers himself offered into evidence. That report stated: "He [Rivers] was fully aware of what he was doing in the holdup, and was aware that Williams was carrying a gun." With these facts in the record, it cannot be said that there was no evidence to support the finding of the resentencing court.

█ There remains the last point concerning the denial of counsel. Aside from the fact that, as we concluded above, the resentencing court's findings were fully supported by the record, we think that Rivers' constitutional right to counsel was not abridged. Although Rivers was not given an opportunity to challenge the resentencing court's finding before it, his counsel did so before the Pennsylvania Supreme Court on appeal. That tribunal, with full power to reverse or to modify the sentence as the facts and law allowed, upheld the finding and affirmed the sentence. Under these circumstances we cannot say that Rivers was denied counsel.

Rivers' reliance on Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), is misplaced. There, not only were the findings of the sentencing court without support in the record, but were actually contradicted by it and, as the Supreme Court said at 334 U.S. 741, 68 S.Ct. 1252, were the product of a "careless or designed pronouncement." As we have demonstrated above, that is not this case.

The judgment of the district court will be affirmed.

GANEY, Circuit Judge (dissenting).

The Court of Appeals for the Fifth Circuit has ruled that in a capital case in a state court due process of law requires that the defendant have benefit of counsel at his sentencing. Ellis v. Ellisor, 239 F.2d 175 (1956). This ruling, in my opinion, means that the benefit is to be conferred upon the defendant at every important stage of the court sentencing procedure. Was George Lee Rivers denied this benefit in the State Court? It appears to me that he was.

Whether the due process clause of the 14th Amendment to the Constitution requires a court imposing a death penalty to give its reasons, factual or otherwise, for doing so, need not be decided in this case. However, when such a recital is given,[1] a defendant should be afforded an opportunity to object before the sentencing court to any part of the recital he deems erroneous or unjustified. Otherwise, it seems to me, a defendant in a capital case would be denied the effec-

---

1. "Public duty" was given as the motivating factor for the sentencing court's written opinion.

tive assistance of counsel at an important stage of the sentencing procedure. This would be especially true where, as here, the sentencing court has broad discretion in imposing either a life sentence or the death penalty, and the latter, on appeal, will be vacated only for manifest abuse of that discretion, or changed to imprisonment for life in the most exceptional cases.[2]

Rivers maintained both before the Supreme Court of Pennsylvania and the district court that the resentencing court, in its written opinion, either through a misinterpretation of the record or a misapplication of the facts, made prejudicial statements concerning him which were not only erroneous but without factual basis or legal warrant. The district court, upon its own review of the evidence submitted to the sentencing court, was of the view that "the record supports the conclusion of the Supreme Court of Pennsylvania that the sentence was in accordance with Pennsylvania law and justified by the evidence and reasonable inferences therefrom. (Cases omitted.)" It concluded that the case did not present a " 'foundation * * * extensively and materially false,' as was true in Townsend v. Burke, [334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)] * * *." and therefore denied the petition for habeas corpus. A majority of a panel of this Court agrees with that denial. Making the assumption that the district court's view and conclusion, but not its ruling, are correct on those points, I do not think that they answer the due process problem here. Even though the alleged errors in the sentencing court's statement are not the kind that require the vacating or setting aside of the sentence by the Supreme Court of Pennsylvania, if they were brought to the attention of the sentencing court, they might be of sufficient weight to persuade that court to impose a sentence of life imprisonment instead of the extreme penalty.[3] A return trip to the sentencing court by Rivers might well be in vain, but until he has been given the opportunity to make the trip, I will not be satisfied that he has been afforded due process of law. That there is a basis in the record for the sentencing court's findings and sentence, and his chance of success looks unfavorable from a review of the record, should not cause a federal court to overlook his right to challenge the alleged errors before the sentencing court. As long as it appears that a defendant has been prevented from presenting his objections, through his counsel, to the sentencing court and that those objections are not frivolous, a federal court, in my opinion, should not refuse to issue the writ.

Here Rivers has not been given the opportunity to reappear before the sentencing court. His objections are not frivolous—at least three of the seven justices of the Supreme Court of Pennsylvania who heard the second appeal did not think so. As a matter of fact, the three dissenting justices in the second appeal in Commonwealth v. Cater, 402 Pa. 48, 57, 166 A.2d 44 (1960), would have vacated the sentences of death and remitted the record with instructions to sentence Cater and Rivers to imprisonment for life.

I would reverse the order of the district court and remand the cause with instructions to grant the writ providing for a reasonable time limitation in which to give Rivers an opportunity to present his objections to the Court of Oyer and Terminer of Philadelphia County, Pennsylvania.

2. The Supreme Court of Pennsylvania has reduced a sentence of death to life imprisonment in but three cases. See Commonwealth v. Cater, 402 Pa. 48, 57, 166 A.2d 44 (1960).

3. In principle the situation is akin to one where a trial court has failed to rule on a party's motion for a new trial involving a constitutional question and on appeal the appellate court treats the failure as though the trial court denied the motion, and, after reviewing the entire record, affirms the denial. Should not the appellate court have remanded the case to the trial court for its ruling on the motion for a new trial even though the party's chances of getting a favorable ruling are slim?