689

Mansford BOGGESS, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

No. 435–E.

United States District Court
N. D. West Virginia.

March 21, 1966.

John E. Busch, Jr., Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Leo Catsonis, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Mansford Boggess, an inmate of the West Virginia State Penitentiary, is now in the custody of the Respondent, serving a life sentence for unarmed robbery, imposed on November 1, 1954, by the Inter-

mediate Court of Kanawha County, West Virginia. This sentence was imposed after Boggess, who originally had been indicted by a Kanawha County Grand Jury for armed robbery, was given leave by the court, before trial started, to enter a guilty plea as to unarmed robbery.

In 1964 Boggess unsuccessfully petitioned the West Virginia State Supreme Court of Appeals for habeas corpus relief, generally contending that he had not been afforded effective and competent assistance of counsel in his state court proceedings. This general contention was based on two specific allegations. The first was Boggess' argument that his court appointed attorney had tricked him into entering the guilty plea as to unarmed robbery, in that the attorney had assured him that he would receive only a fifteen year sentence. The second was Boggess' argument that he had been denied due process of law, in that his attorney had not been present at sentencing.

In his present petition for federal habeas corpus relief, Boggess has repeated the allegations he raised in his 1964 petition for state habeas corpus. Therefore, the two issues, concerning Petitioner's voluntary guilty plea and the absence of his court appointed counsel at sentencing, are now before this Court.

Preliminarily, it might be noted that both issues are factual in nature. Although Boggess does not allege that he has followed the guide lines recently laid down by this Court in Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965), the disposition of this case on the merits will not be affected by *Miller*, since Boggess' plenary hearing was conducted before *Miller*. The same case filed now, however, would not have been considered had Petitioner failed to exhaust state remedies.

Preliminarily, it might also be noted that Charles F. Paul, District Judge, now deceased, originally issued an order to show cause in this case, and that the Respondent answered. After the death of Judge Paul, the case was ordered transferred from the Wheeling, West Virginia, Civil Docket to the Civil Docket in Elkins, West Virginia. Counsel for the Petitioner was thereafter appointed, and a plenary hearing was held before this Court on October 12 and 14, 1965.

In addition to the testimony offered at the plenary hearing, this Court has also given consideration to the pleadings, reports and orders that are a part of the records. Accordingly, it has arrived at the following two factual determinations.

First, there is no reason to conclude that Petitioner was tricked into entering a guilty plea, nor that his guilty plea to unarmed robbery was not voluntary. In arriving at this determination, this Court especially notes the testimony of Petitioner's court appointed counsel, who handled the 1954 proceedings in the Kanawha County Intermediate Court. The trial court appointed atttorney testified in the plenary hearing that he had warned Boggess of a possible life sentence if found guilty of armed robbery, and that he had also informed Boggess that a guilty plea to a lesser offense might reduce the sentence to fifteen years. (The attorney suggested that at the time he advised Boggess of these possible alternatives he was not aware of the extent of Boggess' past criminal record.) But the attorney denied having forced a guilty plea. (The court appointed counsel had also made the same denials by affidavit, dated February 5, 1965, and filed with this Court in the records of the case.) While it is apparent, therefore, that Boggess' attorney in the state proceedings may have recommended the guilty plea because of the possibility of a reduced sentence, there is nothing to indicate, other than Boggess' own allegations, that Petitioner was, in fact, promised a reduced sentence as an inducement. Boggess' attorney, moreover, specifically testified that no deal had been arranged with the prosecutor's office. This testimony was at least partially substantiated when the state probation officer, who had handled Boggess' case, indicated, before this Court, that

Petitioner never had mentioned any deals to him.

In other words, there is no credible testimony which suggests an involuntary plea. To the contrary, there is evidence that the state had recommended a life sentence from the very start of the proceedings because of Boggess' long history of violent criminal activity and psychopathic tendencies. It is also apparent that news of this recommendation had reached Boggess. Petitioner, it seems only natural, could have entered a guilty plea on his own accord, in hope of avoiding a life sentence.

Petitioner, it also is noted in passing, claims that he was "mislead" by his court appointed counsel, and he further claims that since he was "unlearned in the science of law," he entered his plea with the mistaken thought that his term would not exceed fifteen years. But the records reveal that Boggess is no novice to criminal proceedings and that most of his adult life has been spent defending himself against criminal charges. It must be assumed that Boggess was experienced enough to have known what he was doing.

■ Because of the above stated reasons, therefore, it is the conclusion of this Court that Petitioner simply has not proven his contention that he was tricked into entering a guilty plea.

■ As to the second issue, however, this Court now finds, as a matter of fact, that Petitioner's attorney was not present when sentence was imposed by the state court. In arriving at this conclusion, this Court notes that at the plenary hearing, Boggess' trial court appointed counsel was not able to say that he had been present. Neither did the state attempt to establish his presence. Hence, Boggess' contention must be taken as true. Moreover, it was not shown, or even suggested, that Boggess had waived his right to counsel at sentencing, as others have done. E. g., Batson v. United States, 137 F.2d 288 (10th Cir. 1943); United States ex rel. Kelly v. Fullam, 224 F.Supp. 492 (E.D.Penna.1963). The issue, therefore, cannot be avoided.

It has been said that there is a split of authority as to whether the presence of counsel at sentencing is necessary to the validity of the proceedings, Batson v. United States, supra at 137 F.2d 289. For a discussion of the possible split as it may involve state court decisions· see Annot., 20 A.L.R.2d 1240 et seq. (1951); 3 A.L.R.2d, later case service, 288–291 (1965); 24 C.J.S. Criminal Law § 1574 (1961).

■ But this Court has been able to find no such possible split among federal court decisions. As to criminal prosecutions conducted in federal courts, for example, it has been held that absence of counsel at imposition of sentence, without intelligent waiver, is constitutionally impermissible, Martin v. United States, 182 F.2d 225, 20 A.L.R.2d 1236 (5th Cir. 1950), cert. den., 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950), even though an associate counsel, whose duties had previously ended, was present as a spectator in the courtroom, Wilfong v. Johnston, 156 F.2d 507 (9th Cir. 1946), and even though counsel's husband, who was a law partner, but was not associated with her in the case, was present in the courtroom, Gadsden v. United States, 96 U.S.App. D.C. 162, 223 F.2d 627 (1955). See United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963); cf. Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633 (1942); Stidham v. Swope, 82 F.Supp. 931 (D.Calif.1949); but see Walton v. United States, 92 U.S.App.D.C. 26, 202 F.2d 18 (1953); Willis v. Hunter, 166 F.2d 721 (10th Cir. 1948), cert. den. 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772 (1948); Kent v. Sanford, 121 F.2d 216 (5th Cir. 1941), cert. den. 315 U.S. 799, 62 S.Ct. 622, 86 L.Ed. 1200 (1941); Plechner v. United States, 181 F.Supp. 591 (E.D.Penna.1960).

To be sure, these foregoing decisions only involved situations where federal relief was granted to defendants who had been sentenced in the absence of counsel by federal courts, and in Boggess' case, this Court is now presented with a peti-

tioner who was sentenced by a state court. But the same standards have been applied in the cases of state prisoners.

■ A petitioner convicted of a crime in a state court, it has been held, has a constitutional right to the benefit of counsel at sentencing, federal habeas corpus being available when that right has not been afforded. Ellis v. Ellisor, 239 F.2d 175 (5th Cir. 1956); Hollis v. Ellis, 201 F.Supp. 616 (S.D.Tex.1961); United States ex rel. Rivers v. Myers, 301 F.2d 782, 784–785 (3rd Cir. 1962) (dissent), cert. den. 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962); see Loper v. Ellis, 263 F.2d 211 (5th Cir. 1959); Houston v. Ellis, 252 F.2d 186 (5th Cir. 1958); Robbins v. Green, 218 F.2d 192 (1st Cir. 1954); cf. Petition of McAllister, 208 F.Supp. 636 (D.N.J.1962).

■ This right of federal prisoners, as well as the corresponding right of state prisoners, should not depend upon the imposition of the death sentence, Hollis v. Ellis, supra at 201 F.Supp. 619 (dictum), nor upon the fact that the sentencing is not the result of an actual trial. The injustices which are sought to be remedied by the presence of counsel, such as a typical defendant's obvious inability to ascertain when his sentence has not been based upon proper legal grounds, Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), his lack of opportunity to object before the sentencing court to any part of the recital which he deems erroneous or unjustified, United States ex rel. Rivers v. Myers, supra at 301 F.2d 784–785 (dissent), and; in many cases, his inability to suggest circumstances in mitigation of sentence, es-

pecially in those instances where a judge has broad discretion, Batson v. United States, supra at 137 F.2d 289; Davis v. United States, 226 F.2d 834, 839–840 (8th Cir. 1955), cert. den. 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956), are not mollified by the fact that the defendant has been sentenced for a non-capital offense or on the basis of a guilty plea offered and accepted prior to trial. Rather, this right of federal and state prisoners, needless to say, stems from the obvious fact that the court's imposition of sentence will have affected drastically the prisoner's future status in society, In re Ellisor's Petition, 140 F.Supp. 720, 726–727 (S.D.Tex.1956),[1] aff'd sub nom. Ellis v. Ellisor, supra, 239 F.2d 175, certainly a step in which due process cannot be ignored.

■ Therefore, it appears that federal courts, in instances such as the present one, have disfavored the imposition of sentence in the absence of counsel, both by federal and by state tribunals. Petitioner, accordingly, will be entitled to federal habeas corpus relief as to his second contention, unless he is resentenced in a proper fashion.

In closing, this Court now directs its attention to the procedure which would best dispose of the matter. Boggess shall remain in the custody of the Respondent for a period of thirty (30) days from the date of the filing of this memorandum, during which time the state may resentence Boggess, with counsel present, and thereby correct the prior constitutional irregularity. If at the expiration of the thirty days, the state has not taken the appropriate steps, as indicated, Petition-

1. Theoretically, it is possible for a criminal jury, if so empowered, to return a guilty verdict, which also includes pronouncements as to the sentence to be served, the place in which it is to be executed, and the time at which execution of the sentence is to commence. In the alternative, these specifications might be set out by statute. In such a case, one could argue that any subsequent action by the trial judge would be ministerial only. The prime example of a subsequent ministerial act would be a formal "sentencing" by the court. Since this "sentencing" would not in itself affect the defendant's status in society (that status already having been determined by virtue of the jury's verdict), it might be concluded that the presence of counsel, at this stage of the proceedings, would not be constitutionally required. But see Giaccio v. State of Pennsylvania, 382 U.S. 399, 405, 86 S.Ct. 518, 15 L.Ed.2d 447 (Stewart, J., concurring) (1966).

Since this factual situation did not arise in Boggess' case, however, the question need not be ruled on at this time.

er will be ordered released on federal habeas corpus, for the reasons stated above, and any subsequent state action will have to involve new trial proceedings. Hollis v. Ellis, supra at 201 F.Supp. 619; In re Ellisor's Petition, supra at 140 F.Supp. 728. Respondent, furthermore, is ordered to show cause, if any he has, within ten (10) days after the filing of this memorandum, why an order granting the writ of federal habeas corpus should not be issued in case the state does not pursue the corrective steps herein indicated.